IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| SHAWN E. MIDDLEBROOKS, | ) | CASE NO. 3:19-CV-02759-JPC |
| | ) | |
| Plaintiff, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL ARMSTRONG |
| WARDEN LYNEAL WAINWRIGHT, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant, | ) | |

I.      INTRODUCTION

Petitioner Shawn E. Middlebrooks ("Middlebrooks") seeks a Writ of Habeas Corpus under 28 U.S.C. § 2254. (ECF Doc. 1). Middlebrooks, an Ohio inmate, is currently serving an eight-year prison term for possession of drugs. Respondent Warden Lyneal Wainwright[1] ("Respondent"), filed a Return of Writ. (ECF Doc. 8). Middlebrooks filed a Traverse. (ECF Doc. 20). Respondent filed a Reply to the Traverse. (ECF Doc. 21). The matter is before me[2] by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Middlebrooks'

---

[1] Lyneal Wainwright was warden of Marion Correctional Institution when Middlebrooks filed his petition, and Harold May is now warden. *See* https://drc.ohio.gov/mci (last visited Nov. 2, 2022). Harold May should be substituted as the proper respondent in this case. *See* 28 U.S.C.§ 2243 ("The writ . . . shall be directed to the person having custody of the person detained."); Fed. R. Civ. P. 25(d) (providing that, "when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending[,]" "[t]he officer's successor is automatically substituted as a party.").

[2] This matter was originally before Magistrate Judge William H. Baughman, Jr. pursuant to an automatic order of reference. Due to Magistrate Judge Baughman's retirement, this case was referred to the undersigned pursuant to General Order 2022-14 on September 2, 2022.

petition and other case-dispositive motions. For the reasons set forth below, I RECOMMEND that the Court DENY and/or DISMISS Middlebrooks's Petition because his claim lacks merit. I also RECOMMEND that Harold May, the current Warden of Marion Correctional Institution – where Middlebrooks is currently incarcerated – should be substituted for Lyneal Wainwright as the Respondent in this case.

## II.    RELEVANT FACTUAL BACKGROUND

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also Spagnola v. Horton*, No. 17-1462, 2017 WL 8948745, at *2 (6th Cir. 2017). The Ohio Court of Appeals for the Sixth District set forth the following facts on direct appeal:

{¶ 2} This case stems from an incident on September 9, 2017, wherein appellant was apprehended while fleeing from a motel room that was under surveillance by the U.S. Marshals. A subsequent search of the motel room, pursuant to a search warrant, uncovered a box containing a digital scale and 16 grams of heroin.

{¶ 3} On January 11, 2018, the Sandusky County Grand Jury indicted appellant on one count of possession of drugs in violation of R.C. 2925.11(A) and (C)(6)(d), a felony of the second degree, and one count of trafficking in drugs in violation of R.C. 2925.03(A)(2) and (C)(6)(e), a felony of the first degree.

{¶ 4} On May 16, 2018, appellant moved to suppress any evidence gathered from the motel room, arguing that the affidavit submitted to support the search warrant was deficient. The affidavit detailed that the affiant, Captain Zachary Zender of the Sandusky County Sheriff's Office, was assisting several U.S. Marshals on the morning of September 9, 2017, as they conducted surveillance on room 116 of the Great Lakes Motel. At the time, the U.S. Marshals were looking for a fugitive who was not appellant. Zender stated in the affidavit that the Great Lakes Motel is a well-known high traffic area for drug activity. While they were conducting surveillance on the room, a white pickup truck pulled into an adjacent parking lot, and a white male exited the vehicle and approached room 116. One of the Marshals relayed to Zender that the white male engaged in a hand-to-hand exchange with a black male in the doorway of room 116, and then immediately returned to his truck.

2

{¶ 5} Believing that a drug transaction just occurred, Zender and several of the U.S. Marshals followed the white pickup truck. When the truck pulled down a lane, a stop was initiated. Zender stated that as the driver opened the door, he threw something into a weedy area on the side of the lane. As they ordered the driver out of the vehicle, a crack pipe was observed on the floorboard on the driver's side of the white truck. The driver was identified as D.A. D.A. admitted that the object he threw into the weedy area was crack cocaine that he had just purchased from a black male he believed to be named Sean Green. Zender then consulted with another drug task force officer, and came to the belief that the black male who sold the crack cocaine was appellant, Sean Middlebrooks. Zender then showed a picture of appellant to D.A., and D.A. confirmed that was the individual who sold him the drugs.

{¶ 6} At the hearing on the motion, Zender testified consistent with the information in the affidavit. Following the hearing, the trial court found that the warrant was based upon sufficient probable cause. Thus, it denied appellant's motion to suppress.

{¶ 7} The matter then continued to a jury trial. At the trial, Deputy U.S. Marshall Rod Hartzell testified that he was the person observing room 116 of the Great Lakes Motel. Hartzell was stationed away from the motel, and watched the room through a telescope. Hartzell testified that he observed D.A. arrive and enter room 116. Two minutes later, D.A. left the room. Hartzell admitted on cross-examination that he did not observe a hand-to-hand transaction between D.A. and the black male in room 116. Hartzell testified that he then relayed the information of the suspected drug activity, and he remained in his position conducting surveillance while the other U.S. Marshals pursued and stopped D.A. Once a search warrant was obtained, Hartzell joined the other U.S. Marshals in approaching room 116. Hartzell testified that once appellant saw the three cars containing U.S. Marshals enter the parking lot of the Great Lakes Motel, appellant fled on foot. Hartzell pursued appellant in his vehicle, and cut appellant off as appellant was running between houses. A second U.S. Marshal arrived on foot shortly thereafter, and apprehended appellant.

{¶ 8} The state next called Marc Thompson, a task force officer with the U.S. Marshals. Thompson testified that he was involved in the search of room 116, and that he found the box containing the heroin and digital scale. Thompson testified that the box was visibly located in an empty space in the wall underneath a window. The space was accessible from inside the room, and included a small, covered enclosure that extended slightly beyond the outside wall. On cross-examination, Thompson was not completely sure whether the structure containing the box was also accessible from outside of the room.

{¶ 9} The state also called D.A. as a witness. D.A. testified that on September 9, 2017, he contacted appellant in an effort to purchase crack cocaine. D.A. was shown a call log from appellant's cell phone, and identified his number as making an incoming call to appellant at 2:24 p.m., receiving an outgoing call from appellant

at 2:33 p.m., and making another incoming call to appellant at 2:36 p.m. D.A. testified that he then went to the Great Lakes Motel, and purchased crack cocaine from appellant. According to D.A., he did not observe any other people in the room while he was purchasing the drugs. After the purchase, D.A. drove to a different location to use the drugs, and that is when he was stopped by the U.S. Marshals. D.A. stated that as he opened the door to his truck, he threw the crack cocaine into the weeds. D.A. recounted that he was told that the officers were not really interested in him, and that they would not prosecute him for the crack pipe if he assisted them in their investigation. D.A. then identified appellant as the person who sold him the drugs.

{¶ 10} Finally, Zender testified for the state. In addition to recounting the circumstances that led him to obtain the search warrant, Zender testified that the motel room was filled with appellant's clothes and other possessions, and it looked like appellant had been in the room for "some time." Zender testified that they retrieved four cell phones from appellant—three on his person, and one in the room—one of which contained the call information from D.A. Zender also testified that $ 534 cash was found on appellant's person, which he stated was typical of persons who participate in the sale of narcotics.

{¶ 11} Following the presentation of evidence and closing arguments, the jury returned with a verdict of guilty on the count of possession of drugs, and not guilty on the count of trafficking in drugs. The trial court then continued the matter for sentencing.

{¶ 12} At the sentencing hearing, the trial court ordered appellant to serve the maximum prison term of eight years. The court also assessed court costs.

*State v. Middlebrooks*, 2019-Ohio-2149, at ¶¶2-12 (Ohio Ct. App. 2019). (ECF Doc. 8-1, Ex. 12,

PageID#146-50).

### III. RELEVANT STATE PROCEDURAL HISTORY

#### A. State Conviction

On January 11, 2018, a Sandusky County Grand Jury indicted Middlebrooks, charging him

with: (1) Possession of Heroin, in violation of O.R.C. § 2925.11(A)(C)(6)(d) and (2) Trafficking

in Heroin, in violation of O.R.C. § 2925.03(A)(2)(c)(6)(e), which included a forfeiture

specification and a specification that the offense occurred in the vicinity of a juvenile. (ECF Doc.

8-1, Ex. 1, PageID#54-56). Middlebrooks, through counsel, entered a plea of not guilty.

4

On May 6, 2018, Middlebrooks filed a motion to suppress all evidence obtained from the search of his hotel room based on an argument that the affidavit in support of the search warrant was deficient. (*Id.*, Ex. 2, PageID#57-63). The trial court denied the motion to suppress after a hearing. (*Id.*, Ex. 3, PageID#69). On July 20, 2018, a jury found Middlebrooks guilty of Possession of Heroin, but not guilty of Trafficking in Heroin. (*Id.*, Ex.4, PageID#70). Before his sentencing, Middlebrooks filed a Motion for Acquittal pursuant to Criminal Rule 29 or for a New Trial on the basis that the evidence was insufficient to support his conviction. (*Id.*, Ex. 5, PageID#71-81). The trial court denied this motion. (*Id.*, Ex. 6, PageID#82). On July 27, 2018, the court sentenced Middlebrooks to an eight-year term of imprisonment. (*Id.*, Ex. 7, PageID#83-85).

### B.  Direct Appeal – Ohio Court of Appeals

On August 8, 2018, Middlebrooks, through counsel, filed a timely appeal of his conviction and sentence to the Ohio Court of Appeals for the Sixth District. He raised the following assignments or error:[3]

(1) The trial court erred by denying the motion to suppress the fruits of the search warrant pursuant to the exclusionary rule of the Fourth Amendment to the U.S. Constitution and Article I, Section 14, of the Ohio Constitution.

(2) The verdicts were not supported by sufficient evidence and fell against the manifest weight of the evidence.

(3) The trial court failed to impose costs at the sentencing hearing and failed to find appellant had the ability to pay costs, rendering the imposition of costs invalid.

(*Id.*, Ex. 9, PageID#94-124). The State opposed this appeal. (*Id.*, Ex. 10, PageID#129-37). Middlebrooks filed a reply brief. (*Id.*, Ex. 11, PageID#138-45). On May 31, 2019, the Ohio Court of Appeals for the Sixth District rejected Middlebrooks' assignments of error and affirmed the trial court's judgment. (*Id.*, Ex. 12, PageID#146-62).

---

[3] Middlebrooks's assignments of error in his direct appeal to the Ohio Court of Appeals are set forth verbatim herein, including certain typographical and/or grammatical errors.

### C.  Direct Appeal – Ohio Supreme Court

Middlebrooks, through counsel, filed a timely notice of appeal to the Ohio Supreme Court. (*Id.*, Ex. 13, PageID#163). In Middlebrooks's Memorandum in Support of Jurisdiction, he asserted the following propositions of law:[4]

> (1) It is a violation of due process for an appellate court to rely upon evidence of drug trafficking in order to support a finding of constructive possession of a controlled substance when a jury acquitted the defendant of the only charge of drug trafficking.
>
> (2) A guilty verdict of drug possession based upon constructive possession falls against the manifest weight of the evidence when the lower court relied upon evidence of drug trafficking despite defendant being found not guilty of drug trafficking.
>
> (3) The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio constitution requires suppression of evidence when it becomes clear that the basis for the search warrant, here an alleged hand-to-hand drug transaction observed by law enforcement officers, is proven at trial to in fact not to have been observed.
>
> (4) Probable cause for a search warrant cannot be based upon a search warrant cannot be based upon an informant's statements unless such statements are deemed reliable.
>
> (5) A felony defendant has standing to challenge the unconstitutional stop of the informant whose statements are relied upon to establish probable cause for a search of defendant's premises.

(*Id.*, Ex. 14, PageID#166-83). On October 1, 2019, the Ohio Supreme Court declined jurisdiction pursuant to S.Ct.Prac.R. 7.08(B)(4) and dismissed the case. (*Id.*, Ex. 15, PageID#184).

---

[4] Middlebrooks's assignments of error in his direct appeal to the Ohio Supreme Court are set forth verbatim herein, including certain typographical and/or grammatical errors.

## IV.    FEDERAL HABEAS PETITION

On November 11, 2019, Middlebrooks, *pro se*, filed the instant Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF Doc. 1). In his Petition, Middlebrooks asserts a single ground for relief and supporting facts:[5]

> **GROUND 1:** The conviction is in violation of Petitioner's due process with a felony conviction without sufficient evidence.

> **Supporting Facts:** 1) The conviction for drug possession is not supported by sufficient evidence since the location of the drugs were located in a common area outside the hotel room rented by the Petitioner; 2) the state court erred with the facts of the case, relying on facts that are belied by the record; and 3) the state court relied on fruit of the poisonous tree evidence after the jury acquitted the Petitioner of trafficking drugs.

(*Id.* at PageID#5).

## V.    LEGAL STANDARDS

### A.  Jurisdiction

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him" 28 U.S.C. § 2241(d). The Court of Common Pleas of Sandusky County sentenced Perez, and the Court takes judicial notice that Sandusky County is within this court's geographic jurisdiction. Accordingly, this Court has jurisdiction over petitioner's § 2254 petition.

### B.  AEDPA Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Gordon's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Murphy v. Ohio*,

---

[5] Middlebrooks's ground of relief and supporting facts in his Petition are set forth verbatim herein, including certain typographical and/or grammatical errors.

551 F.3d 485, 493 (6th Cir. 2009). AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases," and "'to further the principles of comity, finality, and federalism[.]'" *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *Williams v. Taylor*, 529 U.S. 420, 436 (2000)). The Act "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It therefore "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id.*

One of AEDPA's most significant limitations on district courts' authority to grant writs of habeas corpus is found in § 2254(d). That provision prohibits federal habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Habeas courts review the "last *explained* state-court judgment" on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis in original). A state court has adjudicated a claim "on the merits[,]" and AEDPA deference applies, regardless of whether the state court provided little or no reasoning at all for its decision. *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

"Clearly established Federal law" for purposes of § 2254(d)(1) "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes only "'the holdings, as

8

opposed to the dicta, of [Supreme Court] decisions.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Howes v. Fields*, 565 U.S. 499, 505 (2012)). The state court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them; it is sufficient that the result and reasoning are consistent with Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state-court decision is contrary to "clearly established Federal law" under § 2254(d)(1) only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). And "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A state court's determination of fact is unreasonable under § 2254(d)(2) only if the court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). The petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (quoting § 2254(e)(1)); *see also Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011). "This standard requires the federal courts to give considerable deference to state court decisions." *Ferensic v. Birkett*, 501 F.3d 469, 472 (6th Cir. 2007). The Supreme Court has cautioned, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt*, 571 U.S. at 18 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

Indeed, the Supreme Court has repeatedly emphasized that § 2254(d), as amended by AEDPA, is an intentionally demanding standard, affording great deference to state court adjudications of federal claims. The Supreme Court has admonished that a reviewing court may not "treat[] the unreasonableness question as a test of its confidence in the result it would reach under de novo review[,]" and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."). Rather, § 2254(d) "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,'" and does not function as a "substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03, *quoting Jackson*, 443 U.S. at 333 n.5 (Stevens, J., concurring in judgment). Thus, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. The Supreme Court readily acknowledges that this is a very high standard, observing that: "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

## VI.     ANALYSIS

In his sole ground of relief, Middlebrooks asserts that his felony possession conviction is in violation of his due process rights because it is not supported by sufficient evidence. Specifically, he asserts that: (1) the conviction for drug possession is not supported by sufficient evidence because the drugs were located in a common area outside his rented hotel room; (2) the state court made an unreasonable determination by relying on facts that are "belied by the record"; and (3)

the state court relied on "fruit of the poisonous tree evidence" after the jury acquitted him of drug trafficking. (ECF Doc. 1, PageID#5). Middlebrooks failed to provide any analysis in support of his claims. (*See generally* ECF Doc. 1).

Respondent contends that Middlebrooks's claim lacks merit. First, Respondent asserts that Middlebrooks's assertion regarding the location of the drugs is incorrect because there is evidence in the record that supports the courts' finding that the drugs were not located in a common area outside Middlebrooks' rented hotel room. (*See* ECF Doc. 8, PageID#46). Respondent also points out that the evidence presented at trial demonstrates that Middlebrooks was the only occupant of the hotel room, which provided direct access to the location where the narcotics were found. (*Id.* at 47). Further, Respondent asserts that there was additional evidence presented at trial that supports the finding of constructive possession made by the Ohio Court of Appeals because the evidence was indicative of drug trafficking activity. (*Id.*).

Next, with respect to Middlebrooks's "fruit of the poisonous tree" argument, Respondent states that Middlebrooks made similar arguments in his appeal to the Ohio Supreme Court. (*Id.*). Respondent notes that Middlebrooks was originally charged with both possession and trafficking of heroin. (*Id.*). Although the jury determined the State did not meet its evidentiary burden for the elements of trafficking, Respondent maintains that the evidence is nevertheless relevant and persuasive circumstantial evidence regarding the issue of constructive possession. (*Id.* at 48). Accordingly, it was appropriate and reasonable for the Ohio Court of Appeals to consider all the evidence presented in trial. (*Id.*).

In his Traverse, Middlebrooks asserts that the Court "must focus on the evidence that does not support [he had] actual or constructive possession of the box containing the drugs." (ECF Doc. 20, PageID#624). He contends that the location of the box is vital because it supports the "incorrect

facts" that caused the state appellate court to reach an inaccurate conclusion. He asserts that the appellate court's statement regarding the box's location is "fatal and a miscarriage of justice." (*Id.*). He asserts that U.S. Marshall Thompson testified that the box at issue was located under the fiberglass roof of the structure next to his rented hotel room, meaning that it was outside of the room. (*Id.*). He cites to the prosecution's statement that the box would not be afforded Fourth Amendment protection or expectation of privacy as support for his proposition that this box was outside his room. (*See id.* at 624-25). Further, he contends that he was never the suspect subject to the surveillance, citing to testimony from U.S. Marshall Hartzell that the surveillance was based on confidential information that a fugitive was occupying Room 116. (*Id.* at 625). Finally, he reiterates that there is no evidence that he had constructive possession of the drugs located in the box. (*See id.* at 625). He asserts that it is "pure speculation" that he was the owner and possessor of the box and then goes on to speculate that the box could have been placed by the original investigation suspect. (*Id.*). Because the box was not tested for fingerprints or DNA, he contends there is no evidence that he was renting the room. (*Id.*). Based on this evidence, he contends that he could have been visiting the person who actually rented the room because the authorities did not provide evidence he was "domiciled in room 166 prior to the date of surve[i]l[l]ance." (*Id.*). Accordingly, he contends that the Court must find the facts used by the state courts to support its conclusion are unreasonable.

In his Reply brief, Respondent first points out that the attached police reports in Middlebrooks's Traverse were not exhibits provided to the jury in his trial, nor were these reports included in any request to expand the record. (ECF Doc. 21, PageID#642). Citing to *Cullen v. Pinholster*, 563 U.S. 170 (2011), he correctly asserts that federal habeas review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. (*Id.*

at 643). Thus, Respondent requests that this Court strike the proposed exhibits from the record and not make its determination based on those police reports.[6] (*Id.*).

With respect to Middlebrooks's sufficiency of the evidence claim, Respondent asserts that Middlebrooks: (1) offers alternative theories of how the box that contained the heroin ended up in the location it was discovered; (2) argues about the absence of direct evidence that ties him to the hotel room; and (3) attacks the credibility of witnesses in his Traverse. (*Id.* at 643-44). Yet, Respondent maintains that *Jackson* does not require the State to "rule out every hypothesis except that of guilt beyond a reasonable doubt." (*Id.* at 644 (citing *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)). When all the circumstantial evidence is examined collectively, Respondent contends that Middlebrooks "plainly was in possession of heroin on September 9, 2017." (*Id.* at 644). Because the state appellate court examined all of the evidence and applied the correct and controlling Supreme Court precedent, Respondent asserts that the Ohio Court of Appeals' decision was reasonable, and as a result Middlebrooks' claim lacks merit. (*Id.*).

### A. Sufficiency of the Evidence Standard of Review

Challenges to a state court conviction based on the sufficiency of the evidence are properly cognizable in a federal habeas corpus petition. *Jackson*, 443 U.S. 309, 321 (1983). In reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. The reviewing court may not "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the [fact-finder]." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

---

[6] On January 19, 2021, then-Judge Baughman ordered the disputed police reports attached to Middlebrooks' Traverse stricken in an order addressing Middlebrooks' motions for additional time to file a traverse, for leave to expand the record, to file a sur-reply, to supplement the record, and to amend his petition. (ECF Doc. 27, PageID#712).

13

On habeas review, this question involves "a double layer of deference[.]" *White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). First, the court "must view the evidence in the light most favorable to the prosecution, and determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Mathis v. Colson*, 528 F. App. 470, 476 (6th Cir. 2013) (quoting *Jackson*, 443 U.S. at 319). "Second, 'even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable.'" *Id.* (quoting *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir.2009)). Under the *Jackson* standard, a habeas petitioner "who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle." *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

### B. Ohio Court of Appeals' Fact Findings

Middlebrooks challenged his conviction on direct appeal, arguing that his conviction was based on insufficient evidence and was against the manifest weight of the evidence. The Ohio Court of Appeals rejected Middlebrooks' challenge, explaining its reasoning as follows:

{¶ 23} In his second assignment of error, appellant argues that his conviction is based on insufficient evidence and is against the manifest weight of the evidence. Insufficiency and manifest weight are distinct legal theories. In reviewing a record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In contrast, when reviewing a manifest weight claim,

[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in

the exceptional case in which the evidence weighs heavily against
the conviction.

*State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220,
quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 24} To prove that appellant was guilty of possession of drugs in violation of
R.C. 2925.11(A), the state must show that appellant "knowingly obtain[ed],
possess[ed], or use[d] a controlled substance or a controlled substance analog."
Appellant argues that the state failed to prove that he possessed the drugs, or that
he did so knowingly.

{¶ 25} R.C. 2925.01(K) defines that "'Possess' or 'possession' means having
control over a thing or substance, but may not be inferred solely from mere access
to the thing or substance through ownership or occupation of the premises upon
which the thing or substance is found." "Possession of a controlled substance may
be actual or constructive." *State v. Robinson*, 6th Dist. Lucas No. L-10-1369, 2012-
Ohio-6068, ¶ 17. "Actual possession involves immediate physical control." *Id*.
"Constructive possession exists when an individual exercises dominion and control
over an object, even though that object may not be within his immediate physical
possession." *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976).

{¶ 26} In *Robinson*, we upheld Robinson's conviction for possession of drugs where
Robinson was the only person present in a very small house that he listed as his
place of residence, his wallet was laying out in the open, and his photographs were
found in a small bedroom that also contained counterfeit crack cocaine and torn
corners of plastic baggies with residue. *Robinson* at ¶ 20. In so doing, we contrasted
that situation with the one in *State v. Joyner*, 6th Dist. Lucas No. L-09-1058, 2010-
Ohio-2794.

{¶ 27} In *Joyner*, we reversed Joyner's conviction for possession of drugs where at
the time the police executed a "no-knock" search warrant, Joyner was found on the
stairwell leading down to the living room. In the living room, small amounts of
cocaine were discovered on a plate, and a woman was standing in the living room.
Notably, no illicit narcotics or contraband were recovered from appellant's person,
appellant's driver's license reflected a different address from the premises being
searched, none of the mail recovered was addressed to appellant, and none of the
utilities were registered in his name. Furthermore, there was no evidence linking a
prior controlled purchase from the residence with appellant. We reasoned that
"[t]he mere presence of [Joyner] in the residence where illegal drugs were found is,
without more, insufficient to establish constructive possession." *Id.* at ¶ 13. Thus,
we held that "[Joyner's] presence on a stairwell does not establish dominion and
control over a plate in the living room." *Id.*

{¶ 28} Here, in contrast to *Joyner*, and similar to Robinson, circumstantial evidence
exists to show that appellant knowingly exercised dominion and control over the

heroin. Appellant was observed entering and occupying room 116 of the Great Lakes Motel. D.A. contacted appellant and purchased drugs from him in room 116 of the Great Lakes Motel. D.A. testified that he did not observe anyone else in the room, and there was no other testimony that anyone else was seen occupying room 116. Appellant's clothes, cell phone, and other items were found in the room, and according to Zender, it looked like appellant had been there for "some time." The drugs were found in a box that was visible and accessible from inside the room. Finally, when appellant saw the U.S. Marshals pull into the parking lot, he fled on foot, and when he was apprehended, $ 534 in cash was found on his person, which Zender testified was consistent with individuals involved in the sale of narcotics.

{¶ 29} From this evidence, we hold that when viewed in the light most favorable to the state, the jury's conclusion that appellant knowingly possessed the heroin was not based upon insufficient evidence. Likewise, upon weighing the evidence, we hold that this is not the exceptional case where the jury lost its way and created a manifest miscarriage of justice. Therefore, we hold that appellant's conviction for possession of drugs in violation of R.C. 2925.11(A) is not based on insufficient evidence or against the manifest weight of the evidence.

{¶ 30} Accordingly, appellant's second assignment of error is not well-taken.

*State v. Middlebrooks*, 2019-Ohio-2149, at ¶¶14-30 (Ohio Ct. App. 2019). (ECF Doc. 8-1, PageID#155-59).

### C. Analysis

The Ohio Court of Appeals applied the evidence sufficiency standard of *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 942 (1991), which is the Ohio analogue to *Jackson v. Virginia*. Thus, the Ohio Court of Appeals correctly identified the applicable legal standard and applied it. Under Ohio law, the necessary element of possession can be established through actual possession or constructive possession. *State v. Butler*, 42 Ohio St. 3d 174, 176 (1989). "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Wolery*, 46 Ohio St. 2d 316, 329 (1976). Comparing prior decisions involving similar factual scenarios to the facts of Middlebrooks's case, the Ohio Court Appeals determined, as a matter of law that - after viewing the evidence in a light most favorable to the prosecution - a rational trier of fact could have found

the essential elements of possession of heroin to have been proven beyond a reasonable doubt. (*See* ECF Doc. 8-1, PageID#155-59). It is this conclusion to which AEDPA deference must be applied.

Middlebrooks contends that the Ohio Court of Appeals' determination is undermined by the fact that the "drugs were located in a common area outside the hotel room rented by [him]." (ECF Doc. 1, PageID#5). Yet, the evidence in the record supports the appellate court's findings. In fact, there was testimony that the box containing the drugs was located resting on the windowsill outside the window of Middlebrooks' hotel room. (*See* ECF Doc. 8-1, PageID#332-34). Further, this box was readily accessible to Middlebrooks from the inside of his hotel room. (*Id.* at 334). There was further testimony that there was no screen in the window next to where the drugs were located. (*Id.* at 445-46). U.S. Marshall Thompson also testified that there was only one door to the hotel room. (*Id.* at 344). Finally, the box could be observed from inside the hotel room. (*Id.* at 409,441). Accordingly, there was evidence to support a determination that the hotel room's occupant would not need to exit the room to access the drugs.

Moreover, D.A. testified that he did not observe anyone else when he purchased drugs in Middlebrooks's hotel room. (*Id.* at 385). A U.S. Marshall watching Middlebrooks's hotel room saw only one African-American male entering and exiting the room repeatedly. (*See id.* at 299-301). The morning leading to Middlebrooks's arrest, law enforcement watched his hotel room and did not observe any other individuals leave or exit the room with the exception of this same African-American male and parties believed to be involved in drug transactions. (*See id.* at 293-97). At the time of the search, no one else was located in the hotel room, and it was filled with Middlebrooks's belongings. (*Id.* at 424, 438). And law enforcement reported that Middlebrooks's belongings appeared to have been there for "some time." (*Id.* at 438). Further, when law

17

enforcement entered the hotel parking lot, Middlebrooks ran and fled the scene. (*Id.* at 299). In addition, Middlebrooks had $534 in cash on his person when he was apprehended. (*Id.* at 421-22). Testimony established that the amount of money was consistent with individuals involved in the sale of narcotics. (*Id.* at 421-22).

Middlebrooks's arguments that the state appellate court erred by relying on facts that are "belied by the record" and on "fruit of the poisonous tree evidence after the jury acquitted the petitioner of drug trafficking charges" are similarly unavailing. Middlebrooks offers little to no analysis in support of this point in his Petition and Traverse and further provides no federal case law to aid the Court in assessing the merits of this claim. (*See* ECF Doc. 1, PageID#5; ECF Doc. 20, PageID#625). It is true that Middlebrooks was indicted for two crimes: (1) trafficking in heroin and (2) possession of heroin. (ECF Doc. 8-1, PageID#54-56). It is undisputed that Middlebrooks was found not guilty of trafficking in heroin by the jury. (*See id.* at 83). Yet, although Middlebrooks was acquitted of trafficking in heroin, the State's argument that this evidence was relevant for purposes of the state appellate court determining constructive possession is well-taken. (*See* ECF Doc. 8, PageID#48). Constructive possession "exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976).

As discussed above, U.S. Marshalls were conducting surveillance on Room 116 starting in the early morning and leading up to Middlebrooks' arrest. The law enforcement officers observed what they believed to be two drug transactions. (*See* ECF Doc. 8-1, PageID#296-97). In the first transaction, the officers observed two women arrive in a vehicle near the hotel room. (*Id.* at 296). One woman left the vehicle, entered the room for a short period of time, and then left the area with the other woman. (*Id.* at 296-97). The second transaction involved a white male, D.A.,

18

and this interaction was confirmed to be a drug transaction after D.A.was stopped by the police. (*Id.* at 297). D.A. identified Middlebrooks at trial as the individual who sold D.A. drugs. (*Id.* at 385-86). Additionally, the box that law enforcement discovered contained a powder mixture and a scale. (*Id.* at 337). This powder mixture totaled 16.11 grams and included three different controlled substances: heroin, tramadol, and fentanyl. (*Id.* at 363-64). Middlebrooks' hotel was located in a "high drug trafficking location." (*Id.* at 401). When arrested, Middlebrooks was found to be in possession of four different cellphones and over $500 in cash. (*Id.* at 512, 421-22). Law enforcement testified it was typical for large amounts of cash to be in possession of those that engage in the sale of drugs. (*Id.* at 422). From this evidence, a rational trier of fact could easily reach the conclusion that Middlebrooks exercised dominion and control over the drugs.

Finally, to the extent that Middlebrooks speculates on how the box containing drugs ended up in his hotel room, challenges the credibility of witnesses, or challenges his verdict based on the lack of direct evidence, these claims should be rejected. (*See* ECF Doc. 20, PageID#625-27). With respect to Middlebrooks' speculations, under *Jackson*, the State is not required "to rule out every hypothesis except that of guilty beyond a reasonable doubt." 443 U.S. at 326. Next, assessing the credibility of witnesses is generally beyond the scope of federal habeas review for sufficiency of the evidence claims. *See Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 20003); s*ee also United States v. Beverly*, 369 F.3d 516, 532 (6th Cir. 2004) ("[D]etermining the credibility of witnesses is a task for the jury, not this court."). Moreover, it is well established that "attacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence." *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002) (quoting *United States v. Adamo*, 742 F.2d 927, 935 (6th Cir. 1984) *abrogated on other grounds by Buford v. United States*, 532 U.S. 59 (2001)). Further, circumstantial evidence alone is "sufficient to

sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *Stewart v. Wolfenbarger*, 595 F.3d 647, 656 (6th Cir. 2010) (quoting *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006)). When the substantial circumstantial evidence of Middlebrooks' case is considered collectively, any rational trier of fact could easily determine that he was in possession of heroin on September 9, 2017.

Accordingly, I recommend that the Court deny and/or dismiss Middlebrooks's Ground One claim because it lacks merit.

## VII.    RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A.  Legal Standard

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)).  The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

20

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; *see also* 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B. Analysis

Middlebrooks will not be able to show that the Court's ruling is debatable among jurists of reason. His sole claim for relief is meritless. Because jurists of reason would not find this conclusion to be debatable, I recommend that no Certificate of Appealability issue in this case.

## VIII.  RECOMMENDATION

Because Middlebrooks has presented a meritless claim, I RECOMMEND that the Court DISMISS and/or DENY his Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 and not grant him a Certificate of Appealability. I also RECOMMEND that Harold May, the Warden of Marion Correctional Institution – where Middlebrooks is currently incarcerated – should be substituted for Lyneal Wainwright as the Respondent in this case.

## IX.    NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of**

21

**good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).

Dated: November 8, 2022

        *s/ Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
United States Magistrate Judge